## BRANTLEY, et al v. KIRK, Governor, et al.
## No. 69-721.

Circuit Court, Leon County.

August 15, 1969.

William G. O'Neill, Ocala, and Joseph C. Jacobs, Tallahassee, for plaintiffs.

Gerald Mager and Wilbur E. Brewton, both of Tallahassee, for the defendant Governor Kirk.

Earl Faircloth, Attorney General, T. T. Turnbull, Assistant Attorney General, for the defendant State Comptroller Dickinson and the defendant State Treasurer Williams.

HUGH M. TAYLOR, Circuit Judge.

*Declaratory decree:* This is an action for a declaratory decree and incidental relief brought to determine the constitutional validity of chapter 69-3, Laws of Florida, fixing the compensation of members of the legislature, which is set forth below —

Section 1. Subsection (1) of section 11.13, Florida Statutes, is amended as read:

11.13 *Compensation of members.* —

(1) (a) Beginning April 1, 1969 the annual salaries of members of the senate and house of representatives, payable in twelve (12) equal monthly installments, shall be:

1. The president of the senate and speaker of the house of representatives, fifteen thousand dollars ($15,000) each.

2. All other members of the senate and house of representatives, twelve thousand dollars ($12,000) each.

When, as here, a court is confronted with litigation involving the constitutionality of highly controversial legislation it is vital to the preservation of our system of government that the court recog-

nize the limitations upon its authority and confine itself to a consideration of the legal questions presented — Is the statute one within the constitutional power of the legislature to enact? Was the statute enacted in the manner prescribed by the constitution? It is the legal duty of the court to answer these questions and, based upon these answers to declare the statute valid and enforce it or to declare the statute invalid and forbid its enforcement. There the judicial duties begin and end.

This is an unusual case in that the chief executive of the state in his official capacity is a party defendant.

Ordinarily the courts are without jurisdiction to issue process directed to the chief executive, as such, and will dismiss sua sponte any effort to implead him. However, the constitution of 1968 expressly provides that the governor signs warrants for the disbursement of state funds in a ministerial capacity, "subject to original mandamus". Section 4(e) article IV. This is an exception to the general rule but is the paramount law.

The present suit is brought as an action for declaratory decree and is predicated upon the refusal of the governor to sign warrants for the payment of salaries authorized by chapter 69-3. The governor would have the right to insist upon his immunity from any suit except "original mandamus" and, consequently to be dismissed from this action. He has not availed himself of that right and has, through his counsel, expressly submitted himself to the jurisdiction of the court. Since the present action is primarily for declaratory relief and any specific relief would have to be by mandamus to enforce the law as declared, it is appropriate for the court to entertain this action and determine the issues of law presented for adjudication.

Chapter 69-3 is the law which resulted from the passage of house bill 795, 1969 Regular Session. This bill was passed in the House of Representatives April 17, by a vote of 68 to 31 and by the Senate April 18, by a vote of 30 to 17. In due course it was presented to the governor who vetoed it April 24, 1969. On April 25 the bill was passed in the House, "the veto of the governor to the contrary notwithstanding," by a vote of 88 to 20, and on the same day was passed over the veto in the Senate by a vote of 35 to 10. In each house the affirmative vote was more than two thirds of the membership.

The validity of chapter 69-3 must be measured by the constitution of 1968. Section 1, article III of the constitution vests the legislative power of the state in the legislature.

Section 5(c), article II of the constitution of 1968 expressly provides that —

"The powers, duties, compensation and method of payment of state and county offices shall be fixed by law."

No provision deals specifically with legislative compensation.

It necessarily follows that the legislature has the absolute power to fix the salaries of its members unless some provision can be found which limits that power.

It is first argued that as regards the salaries of legislators from April 1 to August 5, 1969, the increase in remuneration is "extra compensation" and prohibited by the application of section 11, article XVI, of the constitution of 1885 retained as a statute by section 10, article XII of the constitution of 1968.

Chapter 69-3 became effective as law on August 5, 1969. It fixes salaries of public officers during a period from April 1 to August 5 greater than the rate of compensation fixed by law in effect during that period. It is clearly "extra compensation *** to any officer *** after the services shall have been rendered ***" within the language of section 11, article XVI, constitution of 1885.

It does not necessarily follow that the increase in legislative salaries is invalid. Section 11, article XVI, constitution of 1885, must be read as a whole.

"Section 11. *Extra compensation claims.* — No extra compensation shall be made to any officer, agent, employee, or contractor after the service shall have been rendered, or the contract made; nor shall any money be appropriated or paid on any claim, the subject matter of which shall not have been provided for by pre-existing laws, unless such compensation or claim be allowed by bill passed by two thirds of the members elected to each house of the Legislature."

It is argued that this section provides an absolute prohibition against any additional compensation to a public officer after the performance of the services and that the language relating to a "bill passed by two thirds of the members elected to each house of the Legislature" does not apply to a bill attempting to authorize extra compensation to officers after performance of the services.

Decision of this case would be easier if the court could agree with this contention.

It must be remembered that section 11, article XVI, of the constitution of 1885 is now merely a statute "subject to modifica-

tion or repeal as are other statutes." See section 10, article XII, constitution of 1968.

It is an elementary rule of law that a later statute repeals or modifies all earlier statutes to the extent that they are in irreconcilable conflict with the later enactment. This being true, a later statute fixing increased salaries of legislators *"beginning April 1, 1969"*,[1] is in conflict with an earlier statute providing that such increased salaries cannot be paid. The latest law would necessarily prevail and the validity of the increased salaries would be obvious.

However, the court is impelled to the conclusion that section 11, article XVI, constitution of 1885, must be read as whole. It is not a model of clarity and the use of a semicolon after the words "contract made" tends to support the argument that all the remainder of the sentence should be regarded as separate from that part preceding the semicolon. But the words used are so inconsistent with this construction that it cannot be adopted. It will be observed that the first reference is "extra compensation". Later there is reference to a "claim". Still later, both terms are used in the phrase "unless *such* compensation or claim be allowed by bill passed by two thirds of the members elected to each house to the Legislature". Clearly, the use of the words *"such* compensation" refers to the extra compensation of officers which may be authorized only by a two thirds vote.

It is therefore necessary to consider the validity of chapter 69-3 assuming that section 11, article XVI, constitution of 1885, is a statute applicable to the passage of that law.

Obviously the legislature did not regard house bill 795 as coming within this "statute". Why, we do not know. The fact that the bill did not receive a two thirds vote in either house and was, nevertheless, signed by the officers of both houses and presented to the governor furnishes conclusive proof on this question.

But the function of the court in determining the validity of legislation is to look at the official journals of the legislature alongside the constitution and controlling law and see if the necessary proceedings have been had to convert a bill into a law.

As is above stated, house bill 795 was "passed" in both houses of the legislature by a majority of less than two thirds; it was presented to the governor; it was vetoed by the governor; and, thereafter, it was again "passed" in both houses of the legislature, this time by a majority of more than two thirds of the members elected to each house.

---

1. Throughout this order an emphasis in quotations is supplied.

Assuming, but not holding, that section 11, article XVI, constitution of 1885, is now a valid statute and is applicable to and limits the power of the legislature to authorize extra compensation to its members, the court is of the opinion and holds that it has been fully complied with.

The circumstance that the two thirds vote came only after the veto does not alter the fact that house bill 795 was "passed by two thirds of the members elected to each house of the Legislature." This fact, including the roll call in each house, affirmatively appears from the journals. The bill, therefore, became law even if the two thirds rule applied. It is wholly immaterial whether the members of the legislature rationalized that the bill did or did not fall within section 11, article XVI, constitution of 1885. Being passed in accordance with the constitution and controlling law, it is valid.

There is another, and more impelling reason why section 11, article XVI, constitution of 1885, is not controlling and does not render chapter 69-3 invalid. It can be considered only as a statute and only if it is made a statute by section 10, article XII of the constitution of 1968.

Section 10, article XII, constitution of 1968, is, quite obviously, intended to prevent a vacuum in a question of law which was in the constitution of 1885, but not included in the 1968 revision, and which was not the subject of a pre-existing statute. It was never intended to restrict the scope of the revision of the constitution or to perpetuate limitations upon the legislative power which the revision was designed to remove.

Under the constitution of 1885 the legislative power to pass bills could be exercised by a majority vote of a quorum present in each house, subject to the exception that bills coming within section 11, article XVI required a two thirds vote of the membership of each house.

Under the constitution of 1968 the legislative power to pass bills can be exercised by a majority vote of a quorum present in each house. Period.

There is a very definite lack of consistency between the two documents on the subject of passing bills providing extra compensation to state officers for past services. One requires a two thirds vote. The other does not. Once this inconsistency appears, section 10, article XII is inapplicable and presented no impediment to the enactment of chapter 69-3.

This conclusion can be made abundantly clear by an analysis of the constitutional provisions regulating the passage of laws. Under the constitution of 1968 —

> "Any bill may originate in either house ***". "Passage of a bill shall require a majority vote in each house ***", section 7, article III. "Every bill passed by the legislature shall be presented to the governor *** and *shall become law* if he approves and signs it or fails to veto it ***", section 8, article III,

and after a veto —

> "If each house shall, by a two-thirds vote, re-enact the bill *** the bill *shall become law*", section 8, article III.

Each of these requirements has been fully complied with. Therefore, the bill "became law".

But it is contended that section 10, article XII, of the constitution of 1968 preserved section 11, article XVI of the constitution of 1885 as a "statute", and that by the operation of that "statute" upon these facts house bill 795 did not "become law".

If without the application of section 11, article XVI, constitution of 1885, house bill 795 *would* become law but with the application of that section it would not become law, then surely section 11, article XVI, constitution of 1885 is inconsistent with the constitution of 1968 and is not made a statute by section 10, article XII of that constitution.

It is next contended that the salaries of legislators cannot be increased during the terms for which they were elected. There is nothing whatever in the constitution of 1968 which justifies this conclusion.

Immediately before that constitution became effective the controlling law of the state was the constitution of 1885, as amended and the existing statutes. None of these state directly, indirectly or inferentially that the salaries of legislators may not be increased during their terms. As a matter of historic fact, and of constitutional law, the compensation of members of the legislature has twice, in recent years, been increased and such increased compensation paid to some incumbents. Prior to 1948, the constitution, section 4, article III, provided that the pay of legislators "shall not exceed six dollars a day for each day of session" plus mileage. It will be observed that subject to a constitutional maximum the legislature had the power to fix its own compensation. At the election of 1948 this section was amended to fix the "pay" of

legislators at ten dollars a day for each day of session, plus mileage plus subsistence of seven dollars and fifty cents per day of sessions. Those senators who had been elected in 1946 and who had voted, in 1947, to propose this amendment continued in office until 1950 and drew this increased "pay". Again in 1954 this section was amended to fix the salaries of legislators at twelve hundred dollars per annum plus per diem and travel expenses *fixed by law*. Senators elected in 1952, who voted in 1953 to propose this amendment continued in office and received the increased compensation until their terms expired in 1956. It will also be observed that the legislature was authorized to fix its own per diem and travel expenses subject only to the requirement that they not exceed such allowances for other state officers.

It is argued, however, that the constitution of 1868 as amended in 1871 included this provision —

"No Legislature shall increase its own pay."

and the constitution of 1885 provided that —

"All laws now in force not inconsistent with this constitution shall continue in force until they shall expire by their own limitations, or be repealed by the Legislature." Section 2, article XVIII.

and the constitution of 1968 provides that —

"All provisions of articles I through IV, VII and IX through XX of the constitution of 1885, as amended, not embraced herein which are not inconsistent with this revision shall become statutes subject to modification or repeal as are other statutes." Section 10, article XII.

It is contended that this sequence of enactments makes the quoted provision of the constitution of 1868 a part of the constitution of 1968 and binding at this time.

This argument ignores the fact that the constitution of 1885 did *not* retain any part of the constitution of 1868 as statute law. Section 1 of article XVIII of the constitution of 1885 expressly did just the contrary. It provides "The constitution adopted A.D. 1868, *with amendments thereto* is declared to be superseded by this Constitution: ***" What could be clearer? No part of the constitution of 1868 was permitted to survive the adoption of the constitution of 1885.[2] Of course the statute law, to the extent that it was not

2. It is interesting to observe that if the court were to adopt the argument that provisions of the constitution of 1868 not in direct conflict with the constitution of 1885 and 1968 are still in effect, it would be

inconsistent with the constitution of 1885 was preserved by section 2 article XVIII.

But if there was anything in the statute law on this subject, it has been several times repealed by the adoption each two years of the "Florida Statutes" which contain a general repealing section which appears in Florida Statutes 1967, section 11.2422, as follows —

"Every statute of a general and permanent nature enacted by the state or by the territory of Florida, and every part of such statute, not included in Florida Statutes, 1967, as adopted by 11.2421, as amended, or recognized and continued in force by reference therein or in 11.2423 and 11.2424, as amended, is repealed."

The constitution of 1885, in order to preserve the continuity of government, does two things. It completely supersedes the constitution of 1868 (section 1, article XVIII) and it preserves the laws not inconsistent with the (then) new constitution (section 2, article XVIII).

The constitution of 1968 does *three* things. It supersedes (except article V) the constitution of 1868 as amended (section 1, article XII). It preserves the laws not inconsistent with the new constitution (section 6, article XII). And it provides that the provisions of the old constitution not inconsistent with the new shall become statutes (section 10, article XII). This preservation of constitutional provisions as statutes does not appear in the constitution of 1885.

No part of the constitution of 1868 as amended survived the adoption of the constitution of 1885. It was completely superseded. It follows that the provision of the constitution of 1868 that "no legislature shall increase its own pay" was not preserved by the constitution of 1885 and is not the law at this time.

Finally it is urged that so much of chapter 69-3 as attempted to make the salaries therein fixed retroactive to April 1, 1969 is in violation of section 9, article III of the constitution of 1968 —

"Each law shall take effect on the sixtieth day after adjoinment sine die of the session of the legislature in which enacted or as otherwise provided therein. If the law is passed over the veto of the governor it shall take effect on

---

necessary to hold that the Seminole Indians are, and have been over the years, entitled to elect one Senator and one member of the House of Representatives. See section 7, article XVI, constitution 1868.

the sixtieth day after adjournment sine die of the session in which the veto is overridden, on a later date fixed in the law, or on a date fixed by resolution passed by both houses of the legislature."

Since chapter 69-3 was passed over the veto of the governor and therefore took effect August 5, 1969, it is argued that the salaries provided by that law could not be retroactive to April 1, 1969.

The words "take effect" have long been used in the constitution of Florida to indicate the exact time at which a legislative enactment becomes law, but not necessarily the time as of which the rights of persons may accrue under that law.

August 5, 1969, was the date the *law* took effect. It was not the date that the salaries fixed by that law took effect.

The constitution does not deny to the legislature the power to pass retroactive laws. Ex post facto laws and laws impairing the obligations of contracts are prohibited. Section 10, article I, constitution of 1968. But the mere fact that a law is retroactive or is dependent upon past events for its operation does not make it invalid.

The constitution of 1885 prohibited the payment of "extra compensation *** to any officer *** after the service shall have been rendered *** unless *** allowed by a bill passed by two thirds of the members elected to each house of the Legislature." That provision clearly recognizes the power to pass such legislation but requires a two thirds vote when otherwise only a majority would be necessary. The constitution of 1968 omits this requirement of a two thirds vote and leaves the legislature free to authorize extra compensation for services previously rendered by law passed by majority vote.

The present appropriation bill, by virtue of which all major expenses of the state are currently being paid is certainly a law which is in effect at this time. But many salaries provided for in that bill are increased as of future dates. The law is in effect but the increased salaries are not yet in effect because the same law fixes a different date for the operation of these salary provisions. The fact that one bill provides a salary increase to some officers to begin at a date subsequent to the effective date of the statute and another bill provides for salary increases to other officers to begin as of a date prior to the effective date of the statute does not render one statute unconstitutional or invalid and the other good. But both illustrate the proposition that a salary bill may become effective as a law at a date different from the effective date of the salary authorized.

The court finds that the fact that chapter 69-3 provides for salaries beginning April 1, 1969, does not render the law invalid in whole or in part.

It is adjudged and declared —

1. Chapter 69-3, Laws of Florida, is a valid statute in full force and effect.

2. It is the duty of the comptroller to issue state warrants for payment of the salaries as provided by that law.

3. It is the duty of the governor to countersign such warrants.

4. It is the duty of the treasurer to honor such warrants.

5. Jurisdiction of this cause is retained for the purpose of granting such supplemental relief as circumstances may require.